OPINION OF THE COURT

DARRELL DOWTY, Chief Justice.
I. THE LITIGATION
On September 23, 1998, the Jim Forman initiated litigation before this Court by filing his Petition for Judicial Review alleging wrongful termination on February 25th, 1998, and denial of a pre-termination hearing in violation of his rights to due process. He seeks back compensation and such other relief to which he may be entitled. He has abandoned his prayer for reinstatement. The Respondent Cherokee Nation denies that the Petitioner was wrongfully terminated, denies violation of due process and raises as an affirmative defense, that the Petitioner abandoned his employment. Preliminary motions to dismiss for failure to exhaust administrative remedies and for summary judgment have been litigated pre-trial and overruled. This is a direct appeal to this Court and the matter is properly before this Court pursuant to Article XII of the Constitution of the Cherokee Nation and Title 20, CNCA, Section 51(D).
*9 II. FACTUAL RECORD
Trial was held on May 12, 2000, disclosing the following factual record:
Jim Forman had been employed by the Cherokee Nation since November, 1985, and at the time of the action leading to this litigation, was a Center Standards Officer at the Talking Leaves Job Corps Center at a compensation rate of $15.69 per hour. Mr. Foreman’s personnel history disclosed that his performance evaluations were satisfactory preceding his administrative transfer to a lower position.
On November 1, 1997, Karl Husmann was hired as Director of the Talking Leaves Center and as a supervisor to Mr. Foreman. He undertook an evaluation of Center operations including personnel performance. The Cherokee Nation also contracted with Management Training Corporation to evaluate the performance of the Center. Mr. Husmann identified areas of deficiency in the performance of the Petitioner, and in keeping with his management philosophy, he verbally “coached” Mr. Forman to improve deficiencies. Mr. Husmann did not follow the “Progressive Discipline” procedures as outlined in the Policies and Procedures Manual of the Cherokee Nation. He chose rather to pursue an administrative transfer of the Petitioner on advice of the Human Resources Department of the Cherokee Nation and a because of a perceived “critical situation” in the function of the “Behavioral Management System” of the Center.
Mr. Husmann chose to recommend that Mr. Foreman receive an “administrative transfer” to the position of Residential Ad-visor II, at a lower salary range and at a compensation rate of $13.55 per hour. He discussed this action with the Petitioner on February 25, 1998. Mr. Foreman then took administrative leave and explored other placements with the Nation.
On March 10, 1998, Mr. Foreman was transferred to the position of Residential Advisor II at the Talking Leaves Center. According to the Action Notice the action was an “Administrative Transfer/Demotion”. Mr. Ervin Rock, Human Resources Director, testified that administrative transfers could be made “in the best interest of the Nation and the employee” and that he, as Human Resource Director made the “best interest” decision. The Procedures provide that administrative transfers are not subject to appeal but do allow for a grievance to be filed. Mr. Rock also testified that the administrative transfer procedures could demote an employee to “groundskeeper” in an extreme application of the procedures.
Mr. Foreman met with Mr. Rock, other officials and the Chief of the Nation. He was offered a position of Lead Substance Abuse Technician at the Jack Brown Center on April 3, 1998. Because he had inquired about a residential director position and did not know the status of that application at the Jack Brown Center, he did not accept the substance abuse technician position. The evidence was that the substance abuse technician position was within comparable or higher salary range than the “Center Standards Officer” at the Talking Leaves Center but that Foreman did not inquire about the salary prior to declining the substance abuse technician position.
On April 6, 1998, Mr. Forman was given notice that his administrative leave would expire on April 8 and that he would have to report for work on the next scheduled work rotation. Mr. Foreman did not report and was given notice on April 16, 1998, that he was being terminated for job abandonment under the “progressive discipline” procedures.
*10 III. OPINION OF THE COURT
The Respondent has made a threshold showing that the Petitioner was terminated for cause because of his failure to report to work as directed. However, we must look to the circumstances leading up to the termination and determine whether due process was afforded the employee at the various stages of the proceedings.
Prior to his termination, Mr. Foreman was demoted pursuant to an administrative transfer. He was notified of the lower position and failed to report for work at the end of his authorized administrative leave. He was then terminated for abandoning his position under the progressive discipline procedures.
The evidence shows that the progressive discipline procedures designed to afford due process in employee performance deficiency cases, were not followed in the transfer of the employee. The transfer procedure resulted in the Petitioner’s placement in a position oat a lower rate of compensation. In meeting its burden of showing termination for cause, the Respondent must show that the involuntary administrative transfer to a lower position in this case afforded the Petitioner due process.
The procedures under review are found at Chapter II, Employment Policy, Section D, Subsection J, Transfers, Number 3, Administrative Transfers (a)[1] From a careful review of the record in this case, this Court FINDS that the Respondent has failed to show that the Petitioner was afforded due process in his administrative transfer resulting in a demotion.
Inasmuch as the Petitioner has abandoned his prayer for reinstatement, it is hereby ORDERED that this matter is set for hearing upon the issue of DAMAGES for the 16th day of November, 2001, at 3:30 p.m.
Concur PHILIP H. VILES, JR., Justice, and DARRELL R. MATLOCK, JR., Justice.

. “Administrative transfers are normally used to resolve employee relation problems, disciplinary issues and situations which may result in demotions. Other administrative transfers may be affected for the purposes of best utilizing the talent and skills of the workforce at the discretion of management. When administrative transfers are made to best utilize the workforce, such transfers shall not be deemed an adverse action and not subject to any type of appeal.”